*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0599**

Rachel Marie Davies
f/k/a Rachel Marie Mehralian, petitioner,
Respondent,

vs.

Ali Mehralian,
Appellant.

**Filed February 2, 2015
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19WS-CV-14-362

Rachel Davies, Eagan, Minnesota (pro se respondent)

Ali Mehralian, Bloomington, Minnesota (pro se appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant challenges the district court's grant of respondent's petition for a harassment restraining order (HRO). We affirm.

**FACTS**

Appellant Ali Mehralian and respondent Rachel Davies are divorced and have two minor children. Respondent obtained an HRO against appellant that expired on Friday, March 14, 2014. On Monday March 17, 2014, respondent filed a new petition for an HRO against appellant. The district court issued an order for temporary relief, providing that appellant have no direct or indirect contact with respondent, prohibiting him from being within one mile of respondent's residence, and providing that he "shall not file any frivolous lawsuits against [respondent]." Appellant requested an evidentiary hearing, which was scheduled as provided by law. Before the evidentiary hearing, respondent moved to add the parties' two minor children to the HRO.

At the evidentiary hearing, both parties appeared pro se. Each testified. The district court asked respondent whether appellant had committed "any acts of harassment" between March 14 and March 17. Respondent replied, "Um, I'll have to say no for that," but she also testified about "a pattern of [appellant] filing frivolous court cases against [her] and harassing [her] through the court system."

The district court instructed respondent to describe appellant's actions in the prior two years that respondent believed amounted to harassment. Respondent described that she was sued by appellant several times, including in December 2013 (federal suit), September 2013 (replevin action in state court), and April 2012 (two separate cases for an

order for protection against respondent).[1]  Respondent testified that all of these cases were dismissed, but some appeals were still pending.[2]  She testified that appellant had violated the prior HRO "all the time" and that she had once called the police to report this.  Respondent testified about an incident in which appellant went to the gas station less than one mile from respondent's home, violating the one-mile restriction of the temporary order.  She also testified that appellant had disparaged respondent to their children, to representatives at the children's school, and to a banker.

Appellant also testified at the hearing.  He argued that "this case needs to be dismissed" and that any harassment orders should be coordinated with the marriage dissolution case in another county.  He argued that the district court did not have jurisdiction to hear the petition.  Appellant also testified that the earlier HRO was based solely on evidence of "continuous phone calls" to respondent and that the evidentiary hearing concerning it was "very limited."

The district court asked appellant to respond to respondent's allegations concerning the multiple lawsuits and the disparaging statements to the children, the children's teachers and the banker.  Appellant argued that "[j]ust because [the lawsuits were] dismissed doesn't mean they were frivolous."  Appellant argued that he attempted to obtain the orders for protection "legitimately" because he was afraid of respondent's

---

[1] The district court asked appellant whether there were "[a]ny other lawsuits" filed in the prior two years.  Respondent testified that there were and that appellant was unsuccessful in those suits as well.

[2] Recently, the supreme court denied appellant's petition for review of our decision affirming appellant's criminal convictions in a dispute at respondent's residence. *State v. Mehralian*, No. A13-2201 (Minn. App. Sept. 9, 2014), *review denied* (Minn. Nov. 18, 2014).

3

"criminal associates."  Appellant denied any violation of any court order.  He testified at length about his criminal contempt charge[3] and argued that it arose from an unlawful detainer order, rather than from an HRO.

The district court found "reasonable grounds to believe that [appellant] has engaged in harassment of [respondent]," but it denied respondent's motion to add the minor children to the HRO.  This appeal followed.

## D E C I S I O N

Appellant argues that the HRO is "unconstitutional" because respondent made false statements at the evidentiary hearing and because the lawsuits he filed against appellant were not frivolous.  Appellant has not adequately briefed a constitutional issue, and he has waived the argument.  *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not adequately briefed on appeal are waived).  It appears from a close reading of the arguments in appellant's brief that appellant's intention is to argue that the record does not support the issuance of the HRO.  In the interest of justice, we address that issue despite it not having been expressly argued.

We review the district court's grant of an HRO for an abuse of discretion.  *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).  To find an abuse of discretion, we "must conclude that the district court erred by making findings unsupported by the evidence or by improperly applying the law."  *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009).  The district court's findings of fact

---

[3] Appellant was convicted of contempt of court, but the counts related to the violation of the HRO were dismissed.  We recently affirmed appellant's conviction in an unpublished opinion.  *State v. Mehralian*, No. A14-0032 (Minn. App. Dec. 15, 2014).

"shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. Civ. R. 52.01.

An HRO may be granted when "there are reasonable grounds to believe that the [subject of the HRO] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1) (2014). An HRO may "order[] the respondent to cease or avoid the harassment of another person" or "order[] the respondent to have no contact with another person." *Id.*, subd. 5(a)(1)-(2) (2014).

The district court found that appellant "has engaged in harassment of [respondent]" by filing "multiple unfounded lawsuits" against respondent, and by having been charged with violating an earlier HRO and with contempt of court related to interactions with respondent.

A "determination of whether certain conduct constitutes harassment may be judged from both an objective standard, when assessing the effect the conduct has on the typical victim, and a subjective standard, to the extent the [district] court may determine the harasser's intent." *Kush*, 683 N.W.2d at 845. In its order granting the HRO, the district court cited four court cases that appellant had initiated against respondent and specifically noted that appellant "did not prevail in any of the actions, and [appellant] was found not to be credible by the judicial officer" in one of the cases. The district court

5

also found that appellant's conduct underlying two criminal cases charging appellant with criminal conduct in his interactions with respondent also constitute harassing conduct. The district court also found that appellant's conduct "has had a substantial adverse effect of [respondent's] privacy" and that this "conduct occurred during the time period in which a prior Harassment Restraining Order was in effect." These findings are supported by the record and, in turn, support the district court's determination that appellant's actions constitute harassing conduct.

Although the district court did not make specific findings about the "substantial adverse effect" that appellant's conduct had on respondent's privacy, respondent's testimony amply supports the district court's conclusion. *See* Minn. Stat. § 609.748, subd. 1(a)(1) (defining harassment as acts, words or gestures that are "intended to have a substantial adverse effect" on the petitioner's safety, security, or privacy). Specifically, respondent testified that "it's hard to live like this. I don't like to live like this and wonder what is he going to file next or what is he going to say or who is he going to say it to, when, where." Respondent also testified that appellant's conduct "now [is] to the point where it's all frivolous things that he's writing about me and giving to Your Honors, the judges, and the school and to my bank. . . . running me into the dirt." Because evidence in the record supports a finding that respondent's privacy has been substantially adversely affected by appellant's conduct, we conclude that the district court did not abuse its discretion in issuing the HRO.

Appellant argues that respondent was not truthful and that the HRO is based on lies. Appellant makes numerous references to respondent's "false" and "perjured"

6

testimony about custody, visitation, and respondent's inability to "remember [neither] marriage nor divorce dates" as evidence that her testimony was not credible.[4] The district court found respondent's testimony concerning appellant's conduct to be credible. And we defer to the district court's determination of witness credibility. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *see also Peterson v. Johnson*, 755 N.W.2d 758, 763 (Minn. App. 2008) (stating, in an appeal from grant of an HRO, that "[c]redibility determinations are the province of the trier of fact").

The record supports the district court's findings and conclusion that appellant's conduct constituted harassment and warranted issuing an HRO.

Appellant next argues that the HRO restriction that he "is prohibited from being within one mile of [respondent's] home" is an "unconstitutional infringement on appellant's rights of civility," involving "restriction of thousands of merchants & stores, schools, neighbors, rel[a]tives, etc." Statutory interpretation is a question of law, which we review de novo. *Peterson*, 755 N.W.2d at 761. But we review the district court's ultimate decision to grant the HRO for an abuse of discretion. *Kush*, 683 N.W.2d at 843.

As with appellant's argument that the district court's issuance of the HRO was unconstitutional, his contention that the one-mile restriction is unconstitutional has not

---

[4] Some of appellant's arguments rely on matters outside the record. The record on appeal consists of "[t]he documents filed in the [district] court, the exhibits, and the transcript of the proceedings." Minn. Civ. R. App. P. 110.01. We do not "rely on the parties' recitation of events" on appeal. *Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2001). The district court "must base its findings in support of a restraining order on testimony and documents properly admitted" and cannot rely on information outside the record. *Kush*, 683 N.W.2d at 844. In deciding this case, we disregard those portions of each party's brief reciting facts outside the record.

been adequately briefed. *See Melina*, 327 N.W.2d at 20. Even overlooking appellant's failure to properly brief this issue, we find no authority to support his argument that the scope of the HRO raised any constitutional issue.

We interpret appellant's briefing on the issue of the one-mile restriction to implicitly challenge the reasonableness of that restriction. The district court found that appellant had two separate criminal charges involving respondent: one criminal charge of violating an HRO and one criminal contempt of court charge that "arose out of the interactions between the parties." It prohibits appellant from being within one mile of respondent's residence.

The record supports the district court's imposition of the one-mile restriction around respondent's home to provide effective relief to her. The one-mile restriction is reasonably tailored to afford respondent a zone of safety and security. Under the circumstances and in consideration of the record evidence of appellant's extensive harassment of respondent, the one-mile restriction is reasonable.

Appellant argues that he was not afforded due process. No person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amends. V, XIV, § 1; Minn. Const. art. I, § 7. Due process requires "adequate notice and an opportunity to be heard before being deprived of life, liberty, or property." *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 911 (Minn. App. 2010). We review the procedural due process afforded a party de novo. *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 220 (Minn. App. 1999), *review denied* (Minn. July 28, 1999). The due process need only be "tailored, in light of the decision to be made, to the

capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." *Mathews v. Eldridge*, 424 U.S. 319, 349, 96 S. Ct. 893, 909 (1976) (quotation and citation omitted).

Appellant was notified of the temporary order and of the right to request a hearing. He availed himself of the opportunity to request an evidentiary hearing, as permitted by statute. *See* Minn. Stat. § 609.478, subd. 3 (2014). A hearing was held at which both parties testified and had the opportunity to offer other relevant evidence. Appellant testified at length about respondent's allegations. Our review of the record confirms that the district court provided a fair and full hearing and did not deny either party due process of law or any other procedural right.

Finally, appellant argues on appeal that the presiding district court judge should have recused herself. But appellant did not request that the district court rule on this issue. Since this argument was not raised before the district court, it is not properly before us and is waived. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

**Affirmed.**